*711 OPINION.
Smith:
The question presented by this proceeding is whether the petitioners' derived any taxable income from the sale by them in 1921 of certain interests in the law firm of Prichard, Saul, Bayard & Evans. The sale price of the assets sold was $110,000. The cost of the tangibles included in those assets -was $20,000 and it is conceded that the petitioners derived no income from their pro rata shares of the $20,000 bid for the tangibles. It is contended by the respondent, however, that the intangibles of the partnership were acquired without cost to it and that the amounts of money received by the petitioners representing their pro rata interests in the intangibles constituted taxable income of the petitioners in 1921. These amounts were, in the case of Maurice B. Saul, $30,150, and, in the case of Joseph Neff Ewing, $2,250. The petitioners’ contentions are that they received their interests in the partnership by bequest and gift and that therefore the amounts received by them representing the sale price of the intangibles are exempt from income tax.
The evidence indicates that what was sold by the petitioners in addition to their interests in the tangibles of the partnership was the right of the partnership to continue to occupy the offices theretofore occupied by John G. Johnson and by the successor firm of *712 Prichard, Saul, Bayard & Evans, and the right to the possession of all of the files of the Johnson office and of the office of the successor firm except where the clients indicated their wish that the files should be transferred to the outgoing partners.
The assets for which Evans and the group of partners represented by him bid $110,000 is indicated by the following testimony of Maurice B. Saul:
The bidding took place, I think, on the 28th of February of that year [19211 All of these papers and documents were in that office, and it was agreed that the documents and the papers which had come to us from Mr. Johnson should remain with the firm or group of members of this firm that retained the offices. We had a lease on the offices for three years, and that lease had eighteen months to run. The outgoing firm, or whoever did not stay in the offices had no right to any possession of the papers except duplicates of any opinions or paper books, printed paper books, printed briefs that were in that office, or such clients’ papers as the client should designate in writing should be delivered to the group who went out of the office. Papers, wills, or valuable documents belonging to clients that the client did not so designate by written authority to deliver to those partners who did not retain the offices were to remain in the offices.
The bidding, — I bid as representing the group, for the right to those papers, the possession of those papers, and the resultant good that would flow to me as the possessor of those papers which I turned over to the firm on Mr. Johnson’s death with Mr. Prichard, $105,000; Mr. Evans and his group bid $110,000. I did not bid any higher and he got the possession of the offices, books and the papers belonging to clients, wills and private papers, and Mr. Ewing, Mr. Iiemick, Mr. Lamorelle and myself left the offices and formed this new firm with my brother and some of his associates, and moved to an identical suite on the eighteenth floor of the same building where we started the practice of law, and secured such papers as the clients authorized us to receive.
Q. Mr. Saul, what was the principal asset that you were bidding $105,000 for?
A. The principal asset was the — what has been called good will, but it is,— it was the right to the possession of the various papers that had been bequeathed to Mr. Prichard and to me by Mr. Johnson, and the value of those papers, as far as future clients were concerned, — the clients to my experience, come in to the firm where their papers are, and to the firm that has possession of those papers, especially of a private nature, they do not want their private affairs disclosed to everybody, and they want to go to the firm that has the possession and continues to have possession of their wills and their private papers. That was the right that I was bidding for, — the asset of that firm that X was bidding for — that mass and great bulk of legal papers that belonged to the clients of John G. Johnson.
The value of the legal papers bequeathed to Prichard by Johnson was at the date of the receipt of them by Prichard in 1917, in the opinion of Saul, approximately $350,000 and at the date of the dissolution of the partnership of Prichard, Saul, Bayard & Evans approximately $120,000. These estimates of value were confirmed by the testimony of Owen J. Roberts, a witness for the petitioners. Evidence of this character is competent to prove value. Fidelity Trust Co., 3 B. T. A. 292. Whatever value the law papers had at the date *713 of their receipt by Prichard was contributed to the partnership by Prichard upon the organization of the partnership of Prichard, Saul, Bayard & Evans. Saul acquired his interest in those papers either by bequest from Johnson or by gift from Prichard. Ewing acquired bis interest in the partnership assets by gift on January 1, 1920. The value of the law papers and the good will attaching thereto decreased from the date of Johnson’s death but that value had not entirely disappeared at the date of the dissolution of the partnership of Prichard, Saul, Bayard & Evans on March 5, 1921, and we are convinced by the evidence that the value of the right to the possession of the law papers, the good will attaching thereto, the right to occupy the offices formerly occupied by John G. Johnson and to be considered as the successors of Johnson, had a value on March 5, 1921, of at least $90,000, the amount paid therefor by Evans and his associates and that therefore the petitioners derived no taxable itncome from the sale by them of the assets sold.
It appearing that the amounts in controversy in these proceedings are not the entire amounts of the deficiencies determined by the respondent—

Judgment will be entered under Rule 50.